Next case is Northeastern PA Freethought Society versus County of Lackawanna Transit System. Ms. Tack-Hooper. May it please the Court, Molly Tack-Hooper of the ACLU of Pennsylvania for the appellant, Northeastern PA Freethought Society. I'd like to reserve two minutes for rebuttal, please. Granted. Colts' ban on religious words and symbols, no matter the topic of the ad, violates the First Amendment in several ways, each of which is an independent basis for reversal. But I'd like to first focus on viewpoint discrimination. Before you get to that, can we focus on whether it's facial or as applied? Yes, Your Honor, it is both. Viewpoint discrimination. It's an easy answer. You're not in a position, though, to argue both, though. In your position, are you? Are you in a position to argue both ways? Yes, Your Honor, especially when it comes to viewpoint discrimination. A provision that allows the government to censor religious views is unconstitutional as applied to everyone. Even if there were some other way to constitutionally prohibit particular ads that might also be covered by this policy, the provision is facially unconstitutional. The Supreme Court has acknowledged that it can be difficult to tell a subject matter ban from viewpoint discrimination, but a clear rule emerges from Good News Club, Rosenberger, and Lamb's Chapel. And that is that the government cannot exclude speech pursuant to a religious ban if it would allow the speech without the religious content. But this is not a public forum. This is a limited or non-public forum they have here. Two things, Your Honor. Viewpoint discrimination is unconstitutional in any forum. So the court doesn't even need to decide what kind of a forum is here, but we think it's a designated public forum. Well, if it's if it's anything but a public forum, then we have to use the it's not strict scrutiny that we have to give the provision any longer. You don't even have to get to the question of which standard applies if you rule on viewpoint discrimination. It doesn't matter, non-public forum, public forum. If it's viewpoint discriminatory, it's unconstitutional. Well, their position is that this is a concept. We don't want religion on public transportation. It creates fights. It's going to limit our ridership, our income. And therefore, we don't want religion to be part and parcel of advertisement since it's disrupted in many ways. And we can prohibit religion from being advertised because this is not a public forum. And it's a reasonable restriction in a limited public forum. So and we can talk about reasonableness in a moment, but just to focus on the viewpoint discrimination piece there. Even the facts of Good News Club show us that even when something looks like a subject matter ban, it can play out in viewpoint discriminatory ways. So in that case, a school opened its property after school for instruction and social and civic uses by community groups. But it prohibited use by any group for religious purposes. The Good News Club wanted to host a club for kids to hear Bible lessons, memorize scripture and pray. And the school district said that's a religious purpose. We have not opened our property to religious uses. That's banned. And the Supreme Court said that's viewpoint discrimination because what for the religious content? Good News Club would be allowed to come in and talk to kids. The Supreme Court said that prayer and memorizing scripture is really just the teaching of morals and character, which otherwise would be within the purposes of the forum. And that is what Colts has done here. The record. I mean, it's never possible to exclude religion as a subject. Your Honor, I honestly think it's unclear after Good News Club. I think you could do it if you. Here's an example of a way you could take a topic like religion off the table. Say you were a public official and you wanted to have a town hall forum. And for some reason, all your constituents wanted to talk to you about some religious issue. You could say there's so many of you that want to talk about that. We're not going to if we talk about that, we're not going to get to anything else for now. That's off the table. We'll deal with that at another time because we have limited time here and we want to make sure there's access for everything else. We don't have what Colts has done here is not try to preserve limited ad space for other uses. There's no question that Colts ad space can accommodate everything they've banned because for decades they had no restrictions and they had plenty of space for everyone who wanted to advertise. There's nothing in the record to indicate that's what they're doing. Does that mean they could have an ad policy for these billboards in and outside the buses that say only involved children and youth services or? Of only allowing that? Yes, your honor. Yes. That is how you create a non-public forum. Right. So and Colts has not identified any limited purpose like that, nor has it broadly closed the forum to speech on public issues. So we it has. So they can exclude religion as long as they exclude a lot of other things. And the problem with this policy is they exclude almost nothing. Correct. Religion. Correct. Your honor. They they. Second Amendment. Right. So they they chose not to restrict it to commercial speech only. For example, applied to you. It hit the nail on the head because you are making a religious advertisement here. So that as applied to you, the restriction is very, very appropriate. Your honor, they allowed my clients ad without the word atheists. So it's clear that there's no prohibition on my client advertising. The only prohibition is on using particular words associated with religion. So, for example, there's no ban on sports teams advertising. The Steelers can advertise. The Eagles can advertise. Even the New England Patriots can advertise. But the New Orleans Saints cannot. That is what that is what this policy does. Well, the problem is, see, you're wandering between as applied and a facial challenge. And all they want to do is to put religion off the scoreboard here. And their their position is we don't want any religious advertising. It's going to cause problems with our ridership and with our probably safety or whatever else they claim. And we are not a public forum. And so the question is whether this is a reasonable restriction. So the government's own statement of its intent to be a non-public forum does not resolve the question of what kind of a forum it is. This court instead has said that we should look to whether they have broadly either picked a specific topic like commercial only speech or broadly banned speech on public issues. But Colts has disavowed any reliance on the only thing in its policy that resembles a broad ban on public issues, which is its statement of intent not to become a public forum for the debate of public issues. Well, they amended their their original prohibition to include a wider variety of or a more select variety of people that they're prohibiting from advertising. But with that select group, still, you as a religious advocate are certainly well within their their prohibition as to content and not viewpoint at all. They just say they don't want anything to do with religion to be advertised. We have nothing to do with religion and therefore you're this is not a public forum and we can do that because we have good reason to reasonable reasons to exclude you. So, again, your honor, that my client is not prohibited from advertising itself. So there apparently is no ban on atheist organizations promoting themselves. It's a it is a ban on certain words that plays out in ways such that, for example, the Lutheran home care and hospice cannot advertise, not because health care ads are banned. Maternal and family health services can still advertise. But because of the word Lutheran, this is viewpoint discrimination. If we go back to your football example, isn't it more accurate to say they're saying we don't care if you're a Steelers fan or a Patriots fan. We just don't want those kind of arguments. No football. But the the Saints still can't advertise. Right. So this is why it is not a contained subject matter ban. And every time in Good News Club, Rosenberger, Lamb's Chapel, time after time, the government tried to enact a subject matter ban on religion. And in every case, the Supreme Court said, no, that's not what you've done here. You can't forbid religious content if the speech would be acceptable without the religious content. And that is there's no question on this record that Colts ban falls on the impermissible side of whatever line there may be, even assuming there is some constitutional way to ban religion as a topic. The facts are clear that that's not what Colts has done here. But what I hear you saying is the religion can't be banned in any form whatsoever, the name of it or anything to do with it. Is that what you're saying? Or that's what I'm hearing. No, Your Honor, I'm it's hard for me to imagine what that would look like in the context of advertising, where your goal is, is to generate revenue. Frankly, taking certain topics off the table is is intention with that goal, which is why I think Colts probably hasn't closed the forum to more kinds of ads. There's testimony in the record that they wanted to continue to allow a lot of non-commercial advertisers. Well, suppose that they just want to exclude religion from advertising. How could they do it better than they did it in their second, you know, their second try at it? So they'd have to if all they did was say any ad except religion is banned, that would clearly be a designated public forum and they would have to meet strict scrutiny. Well, they didn't say except they said these are prohibited, religious and other other forms of advertising. Now, how should they have if they just don't want to have anything to do with religion advertised? Sure. How could they do it better than they did? What should they have said in their in their code? Well, they could restrict the forum to only commercial advertisers that might not. And then that would make it a non-public forum. And then any additional content based restrictions would only be subject to reasonableness. So they could. New York, for example, has said we only accept commercial advertising and then there are additional restrictions even on the commercial ads we take. Well, can't they say we we prohibit commercial ad, we prohibit religious advertisement and other types of advertising which we're prohibiting? What's wrong with that? It's viewpoint discrimination under good news. Just mentioning religion is viewpoint discrimination. I the way Colts does it clearly is well, maybe I make imagination is just limited. It's hard for me to imagine how the Constitution. Well, how should they have done it if all they wanted to do was prohibit religious, which is obviously what they were trying to do? How should they have done it? How should the code have expressed we all run on any religious advertisement? Your Honor, it's not supposed to be easy to enact content based restrictions on speech. They're presumptively unconstitutional and decades of First Amendment jurisprudence. But this is not a public forum. This is their position is we are a commercial, a governmental enterprise and we don't want to have certain advertising. Now, I'm asking you if they want to prohibit religion and other advertisers, but religion, what should they have said in the code that they made instead of what they did say? Well, so just one point about the premise of your argument, just because it is a transit ad does not make it a non-public forum. This court in Christbride Ministries made clear that that that is not the law of the land. Right. If you if they if the transit agency still broadly allows speech on public issues, which this one does, it continued to accept ads for the Army National Guard, for Scranton Public Housing, even after it enacted this ban for a county commissioner's party. Then it it has not closed the forum. It remains a designated public forum. Well, just because they allow certain ads to come in doesn't make them a public forum. They want to prohibit certain ads and they accept from the Army recruitment ads and so forth. But I'm asking you and you're not getting a response. How should they they say, look, we want religion off the table. What should they have done in that code other than what they've already done in their second code or or create or identify a particular category of speech that they want to reserve the forum for? Right. So that is an answer. No, no, no. They don't want to reserve. They want to prohibit certain categories of speech. They would have to ban a lot more things to close the forum. Right. So I think the two ways you can do it are either identify a category of speech like ads that propose a commercial transaction or regulate so broadly that you have effectively closed the forum to speech on public issues by carving out topic after topic. Isn't isn't the easiest way to close the forum just not to accept ads? Yes. They could just run. Yes. County, it could be government speech. They could run public service announcements all day long. Absolutely. Right. Absolutely. And then no, no, no comers. Absolutely. But that's not what they did. Apparently, we'll hear we'll hear we'll hear from Mr. Specht on that. Any other questions at this time? OK, thank you, Miss Cooper. We'll hear you on rebuttal, Mr. Specht. Would you mind if we start where where we left off? If you really want to close the forum, you just do public service announcements or am I wrong about that? Well, I mean, that's one way to close the forum. But the case law also says that, you know, closing when when you determining whether or not the forum is closed, you're looking to the intent of the commercial entity, in this case, Colts. And when it would comprise the intent analysis, as you look at the policy, you look at how in practice it's been implemented. You look at whether or not they're they're playing fast and loose with their policy. And in this case, all those factors point to that the that Colts intended to close the forum when they enacted these policies in 2013 and 2011. Well, maybe that was the intent. But we also have to look at the the effect and the conduct. Right. And and the conduct and the effect here, as far as I can tell, is that a whole bunch of things are allowed. Let me give you some hypotheticals. Let's Lutheran Home Care and Hospice tried to put it at it and that was rejected under the policy. Right. Yes. Because that. OK, so let's so let's say that let's say that they change their name from Lutheran Home Care and Hospice to Lackawanna Home Care and Hospice. But it's it's the Lutherans. It's the same corporation, same group of people, same religious intent. All they did was change the L word. Can they run their ad? I think so, your honor. I mean, we permitted an ad from Northeast Freethought when they removed the word atheists. And how how is that not viewpoint discrimination under Rosenberger, Lamb's Chapel and Good News Club? That's because that's right right there. Well, we're excluding the subject matter of religion. We're neutral on religion. We're not allowing religious speech or non-religious or non-religious speakers. We're trying to stay out of that. And we have a we have a reasonable basis for that, which is all that we're required to have based on either record evidence or common sense inferences, which I think is supported in the record, your honor. And the record I mean, I wanted to raise this this point initially is this is after a non-jury trial, which means that the standard of review is for clear error. And the facts there are so many facts that they have not done anything to to attack in this case, such as that the policy provides for the sale of advertising, for the for the purpose of generating revenue and for increasing ridership that you're but you're right. And those are legitimate goals, but you're just excluding certain words. You're allowing the word free thought, but you're disallowing the word atheist. Yes, that's that's accepting one viewpoint and and rejecting another viewpoint. No, you're right. Or are you saying free thoughts, not a viewpoint? Free thoughts, not a viewpoint. That's the subject matter of what? What about an ad that's the Society of Friends Home and Care and Hospice? Is that allowed? I believe that the it would probably be excluded under the same for the same reason as the Lutheran was excluded. What's religious about society? The Society of Friends are the Quakers. I don't know that you think you think your typical writers all know that the Society of Friends are the Quakers and they know what the Quakers are. And maybe it's a big Quaker. I don't know. I haven't spent a ton of time in Lackawanna County, but I think so, your honor. And I think that, you know, we're trying to stay out of the business of religion because we're trying to provide a safe transportation experience that keeps our writers coming. But what about an ad that says fight against the Aryan, the Aryan conspiracy? But instead of Aryan being spelled A-R-Y-A-N, it's spelled A-R-I-A-N. Is that allowed? I, I, I, I think so, your honor, because the Aryan, I believe, is is an age old heresy that the church is against. So that would be religious as well. The religious readers, your writers will certainly be familiar with the Aryan, the Aryan heresy. Well, your honor, we're trying to stay out of that. We're trying to eliminate any thought of our writers. The way to stay out of it is just to have only commercial advertisements. Well, we, we list, we've got, we've got an attorney from the, the Civil Liberties Union, perhaps tacitly conceding that you could just have a commercial space. Well, we, we, what about this commercial ad, Chick-fil-A? Chick-fil-A is a commercial ad, yes. And that would fly? I think so, your honor. And people, people are going to know more about the Aryan heresy than they are about the current day controversy about the religious beliefs of the proprietors of Chick-fil-A. We're eliminating any chance of that happening. We, we don't want any controversy or... But to Judge Porter's point, Chick-fil-A has engendered controversy. It's engendered boycotts, support, all kinds of public, public discourse about that organ, that commercial organization, has it not? But it's, it's not, it's not the subject matter of religion, which is what we ban pursuant to this policy. But I thought your goal was to prevent, to prevent arguments and, and worse on the, on the bus. That's the overarching goal, your honor. And to do that, we've enacted this policy with 12 different restrictions and, and that present objective criteria to be considered. We're not, we're not making this a free for all for, for speech on, on buses where we're limiting with, with specific objective criteria regarding what can be, what can be used in the advertising space. Yeah, but your, your policy has a, in addition to barring religion, which I can understand is religion, all right, bar that. But you have a wide discretion to bar things which are not very well illuminated in, in the, in the policy, which gives you a sort of a, a wide ranging ability to select what you want to bar and what you don't want to bar. And I think the appellant would have an awful strong case here, especially if she, if she could mount a as-applied or, or a, a, a, a broad-based claim against the, the policy. But of course, she represents one aspect of that policy, which may not fly as a, as an as-applied prohibition. But you're, you have tremendous discretion as to what you want to allow and not allow. You acknowledge that. I, I would think we have, we have some discretion which is permissible pursuant to the case law. But the criteria that we use are, are specific and objective. And we've been applying them consistently. We've, we haven't been, you know, allowing any, we haven't allowed any. You're, you're, they are, they are somewhat specific, but you're targeting certain viewpoints, right? We're, we're, we're targeting subject matters. Well, couldn't the Brady Center do a, a gun control ad? We're, we're, we're staying away from firearms, I believe, is, is, is one of them. Let's look at the language. What's the language on that? That promotes the use of firearms or firearms-related products or for businesses that primarily traffic. So the Brady Center doesn't promote the use of firearms or firearms-related products. It, it talks about reducing firearm products. So they could put an ad in, right? Well, I think it would also, that would also probably come under the political, the political, the political one as well that indirectly or, or directly implicates the action, inaction, perspective, action, or policies of a government entity. Well, how do you define political? Well, I... Could you put on a, an ad for the next TV show starring Alyssa Milano? Well... Is that political or not? Well, I, I think, Your Honor, you know, the Supreme Court said in, in Lehman that, that's not too vague. I mean, so you, you may have to think a little bit about it. That's permissible. Even, even the Mansky case cited by the appellant cites Lehman and still upholds Lehman, which, which permitted ads of that very nature. You know, and, and the, the, the DC, I believe the DC circuit is, has, has upheld a similar religious subject matter ban in, in, in the AFDI case, I believe it was. So these are things that other transit agencies have done across the country that have been held as reasonable and permissible and viewpoint neutral in, by other, you know, other courts across the country. And again, look, getting back to, to the record as it is, there has to be clear error on, on what the, the court factually determined that supported this policy, that supported the reasonableness of the policy, that supported the viewpoint neutral nature of the policy. The court found facts in a non-jury trial that they have to show clear, that there was clear error in those findings. But what, what facts support viewpoint neutrality? Well, if you just give me one moment, you're on. Is that a legal conclusion? That's a legal conclusion itself. Viewpoint neutral, but it also has some factual issues with it. All right, well, what facts? Well, such as the fact that we, we've banned all religious subject matter speech since this policy is, has, has been enacted. And that... Isn't that what happened in, in Rosenberger and Lamb's Chapel and Good News Club? Right, but the facts of those cases weren't as strong as in this case where we've, let me, the, the, the, you know, the viewpoint neutral nature of it talks about the reasons for the restrictions can be tied to the purpose of the form, not targeting particular views by way of its advertising policy and excluding the entire subject matter religion from its advertising space. The record demonstrates that Colts has not accepted any advertisements that are religious or that appear to promote either the existence or non-existence of God. Um, no evidence proved that Colts rejected thoughts, advertisement, uh, free thoughts advertisements to suppress a point of view it's thought to establish on an otherwise concludable subject. Um, a person of ordinary intelligence can generally tell what types of advertisements are permitted or prescribed by the policy, um, and that the 2013 policy took away unfettered discretion to refuse advertisements. Things of that nature that the court included in its factual findings, you know, just haven't, they haven't even been, you know, there hasn't been even an attempt to show a clear error in those. So, you know, they have to be accepted. Um, and again, we have a very light burden, reasonable, common sense, uh, common sense, uh, inferences, even, even, even, I'm sorry. Does Christ's Bride, uh, require us to, uh, look at this as a public forum? No, Your Honor. Christ's Bride is, is distinguishable from this case. And in Christ's Bride, I believe SEPTA tried to use their advertising space to promote social issues, even at, even, even after, uh, uh, I think that was one of the, they, they left their forum open, uh, to, to, uh, for promotion of social issues. Um, let me give you the exact quote. Um, well, we made it, we made it sure that the commercial nature of the space, uh, used to generate profit, uh, made it a public forum. They, yes, and they said, uh, SEPTA's policies were aimed at generating revenue, promoting awareness of social issues. The forum was intended to be partly commercial and partly expressive. They, they left that part in it, that they wanted, they wanted to use their, their space to promote social issues. In this case, we've, we've, we've restricted the subject matters to try to prevent... You've got every, all kinds of social issues you can do ads on. You just can't do ads, apparently supporting guns or talking in any way, shape or form about religion. Or politics. Or politics. Can I try another hypothetical? Sure. Because under Mansky, um, now the restriction not only has to be reasonable, it has to be workable. So I'm interested in the workability of the policy. What if, uh, the, uh, Catholic bishops or the National Association of Evangelicals wanted to run this ad with this text? We hold these truths to be self-evident that all men are created equal, that they are endowed by their capital C creator with certain unalienable rights. And among these are life, liberty, and the pursuit of happiness. Would that be okay? Uh, Your Honor, I, I, I don't, I don't know. Um, probably the, the, the creator would, would, would, would be a problem. Uh, you know, um, but again, the... What if it said the great spirit? I think again, that would probably be a problem because the great spirit is, is a Indian, uh, American Indian, uh, religious... Well, the problem is, is, is that you're, you have tremendous discretion, uh, as to what you want to accept and what you don't want to accept. And if you're no longer a public forum, if you're a public forum, the game is up. You've got to accept everything except if it's strictly prohibited. But you're trying to say you're a non-public and you have this discretion as to who you want to exclude and who you want to welcome. So if you have such wide ranging discretion, why shouldn't we just say you're no longer a limited public forum? You're a public forum and the prohibition here does not meet strict scrutiny. Well, I, I think that, you know, number one, merely because you have, again, you know, some discretion and interpretation. If, if persons of ordinary intelligence can generally tell what's prohibited and what, and what's not, then that's permissible. Also with the limited public forum aspect is it, this, this is Colt's advertising space is not a free-for-all. It's not a free-for-all for expressive activity. There are limits that... It was before the policy, right? Well, before the policy, Your Honor, it was, but they... How many arrests were there on Colt's buses for political or religious controversies? There weren't, Your Honor, but... There were none. But no, there weren't. But the record supports the fact, and again, we don't have to prove disruption. I think this court even admitted that. We don't have to prove disruption, but what they relied upon were incidents that were taking place across the country. And the fact that, you know, the, the, even, even when they... But it's still, it's still anticipatory, right? The record reflects that. This is a... Right, but it reflects that it's a common sense. The prior, it's a classic prior restraint in a way, right? It's, you're trying to anticipate a problem and you're shutting down speech because you believe in good faith that there's going to be melees on your buses. We believe it's a common sense inference from these type of things that, that allow us to reasonably restrict the speech in this commercial enterprise. You know, even, even when they rejected the first ad that had atheists on it, in this case, there was a huge, you know, virulent back and forth in the local newspaper, in blogs, on the internet, you know, and this is what we're trying to prevent on, on the take these buses out of necessity. They're not coming to it, you know, to try to hear, you know, a speech on, on something. You know, they're, they're, they're using these as necessities. And again, the vagueness inquiry is also, it's also not as strict depending on the, on the, the, I'm trying to find the right word, the, the area where the speech is being restricted, in this case, you know, a commercial enterprise. You know, that, that, that's also supported by the case law. Did Colt consider a commercial only policy? I don't know, your honor, that, that I don't know. So, unless this court has any further questions, I... All right. Thank you very much. Thank you. With respect, I will hear Ms. Tack-Cooper's rebuttal. A couple of points, your honor. Colt's desire to remain neutral on religious issues is already served by its requirement that all of the ads on its buses, buses carry a disclaimer saying that the views are not Colt's views. It's hard to see how any interest is served by a restriction that allows Villanova University to advertise, but wouldn't allow St. Joseph's University because it has Saint in the name, would allow Liberty University to advertise, but not to use their slogan. I, I understood Mr. Speck's argument to be that Villanova and Liberty would be banned as well because the riders would know that they're religious organizations. If they're going to know about the Aryan heresy, they're sure going to know what Villanova is, right? That is an interesting view that's not supported by the record, but even if it were, it runs into the Mansky problem that this is not a workable rule if it depends on a government official making some subjective determination about what people will or won't  It's, and it's not consistent with how Colt has applied the policy thus far, which did ban the Lutherans because of the word Lutheran, but allowed our client, Free Thought Society, to advertise and allowed the Catholic archdiocese to run an adoption for life ad as long as it didn't say archdiocese on it anywhere. So that's just, that's just not supported by the record, his view of how the policy works. And in terms of what forum we're in, this court's decision in Gregoire versus Centennial School District has a good discussion about why it takes more than a collection of content based restrictions to close the forum. The Supreme Court has said that in a designated public forum, content based restrictions are subject to strict scrutiny. It just can't be that therefore any content based restriction closes the forum that would eviscerate the Supreme Court's articulation of that standard. And that's what we have here is just a collection of carving out of minute pieces of content, which is not supposed to be permissible in a designated public forum. Finally, the standard of review of facts doesn't actually matter here because even on the facts we agree on, this policy is facially viewpoint discriminatory, but the standard of review is not clear error for First Amendment cases. The court conducts an independent searching review of the record and the cases that... Are there really any facts in dispute in this record though? We're really dealing with legal interpretations or characterizations of what those facts are. That's correct, Your Honor. And Colts did testify at trial, the solicitor Hinton testified at trial, that Colts considered closing the forum, reserving the forum for only commercial advertisements and decided not to because it wanted to continue to allow non-commercial advertisers and advertisements for government entities like the Housing Administration. Before we let you close, would you please address the issue of intent that Mr. Speck raised? The government's intent to close the forum, yes. This is also addressed in Gregoire. It simply can't be that the only question is what the government says its intent is because if that were the case, then the scope of First Amendment rights would be decided by the government. So courts have not hesitated to look past a government intent and look at policy and practice. And those two things here make very clear that what Colts has done, notwithstanding its desire to be subject to a lower standard of scrutiny here, is to create a forum that is broadly open to speech, commercial speech, non-commercial speech, on almost every conceivable topic except for the handful they've laid out here. And that's just not compatible with their expressed desire to create a non-public forum. So that cuts both ways. Let's say the council or the administrators intended to shut out religious speech, but the policy was drafted in such a way that it was permitted. Then there's no constitutional problem. I'm sorry, could you try that? I'm trying to see if it works both ways. As I understand your argument, the fact that they intended to – they didn't intend to hurt religion or non-religion here. They intended to provide a comfortable and safe bus ride so they could increase ridership and generate revenues. As I understand your argument, even allowing that that's sort of an innocuous intent, it doesn't matter because, in effect, the way the policy is written, the way it's executed, it's viewpoint discriminatory. That's correct. I'm wondering if the intent were otherwise – if they intended to block religious speech, but the policy were written in such a way that it didn't effectuate that result and the intent doesn't render that ordinance – I'm giving you a counterfactual – it doesn't render that ordinance unconstitutional. The court doesn't need to decide that here. Our viewpoint discrimination argument does not turn on Colt's intent. It turns on how the policy is written and how Colt has applied it. Okay, so we should – in your view, we should say that the intent is immaterial here. To this particular case, yes, Your Honor. Okay. Okay. Thank you, Ms. Tack-Hooper. Thank you, Mr. Speck. We appreciate the excellent arguments, and we'll take the matter under advisement.